IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Garron L. Norris, | ) | C/A No.: 1:10-236-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Cpl. C. Polk and Sgt. Terry Blackwell, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, has asserted claims pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. During the incidents alleged in the complaint, Plaintiff was a pretrial detainee incarcerated at the Cherokee County Detention Center ("CCDC"). Before the court is Defendants' Motion for Summary Judgment [Entry #28]. All pretrial proceedings in this case were referred to the undersigned magistrate judge pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.).

I.      Factual and Procedural Background

Plaintiff complains that on January 15, 2010, the water in his cell was turned off as a result of other inmates' flooding their cells. Compl. at 3 [Entry #1]. He further alleges he and another inmate[1] were denied blankets, towels, and sheets. *Id.* He claims the water

---

[1] Plaintiff's complaint also makes allegations regarding inmate Dowdle's lack of water and injury that allegedly resulted therefrom. It is unclear whether Plaintiff is attempting to state a claim for Dowdle's injury, but to the extent he is, that claim fails for lack of standing. In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that he has personally sustained some sort of deprivation of a right, privilege, or immunity secured by the U.S. Constitution or federal law. *Inmates v. Owen*, 561 F.2d 560, 562–63 (4th Cir. 1977).

remained off for two weeks and the inmates were only allowed to flush their toilets only once per day. *Id.* Plaintiff contends this condition constituted cruel and unusual punishment. *Id.* Defendants filed a motion for summary judgment on July 26, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #29]. The *Roseboro* order was initially returned as undeliverable. Upon receiving notice of a change in Plaintiff's address on August 4, 2010, the Clerk's office mailed the order to Plaintiff at his new address. [Entry #34]. To date, Plaintiff has failed to respond. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

II.     Discussion

   A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where

none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id*. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

    B.    Analysis

        1.    Exhaustion of Administrative Remedies

Defendants contend they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005).

Plaintiff's claims are subject to the requirements of the CCDC inmate grievance policy. [Entry #28-4 at 12]. Under that policy, an inmate must attempt to settle any complaints regarding prison conditions with his unit officer. *Id.* If the inmate is not satisfied with the officer's response, he may file a grievance with the detention center administration. *Id.* The grievance will be answered by the administration within seven

days. *Id.* If the inmate remains unsatisfied, the inmate may appeal to the detention center administrator who will render a final decision within seven days of the appeal. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

On January 17, 2010, Plaintiff filed a grievance challenging defendant Blackwell's decision to turn off the toilet water in C-Max. [Entry #28-4 at 10]. That grievance was answered by Captain Crocker on January 19, 2010. *Id.* Plaintiff was informed that the C-Max toilet water had been cut off to prevent further flooding, but that the water would be turned back on periodically to allow inmates in C-Max to flush their toilets. *Id.* Plaintiff did not appeal Crocker's decision to the detention center administrator. Crocker Aff. ¶ 10 [Entry #28-4]. Plaintiff therefore failed to exhaust his administrative remedies[2] and Defendants are entitled to summary judgment accordingly.

---

[2] Although Plaintiff's complaint makes the conclusory allegation that he has exhausted his administrative remedies, Compl. at 4, he also admits on page 2 of his complaint that he had not recived a final answer with regard to his grievance.

2.  Conditions of Confinement

In the event that the district judge does not agree that Plaintiff has failed to exhaust his administrative remedies, the undersigned analyzes the merits of Plaintiff's conditions of confinement claim as follows.

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill v. Nicodemus,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v.*

*Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) and *Hill v. Nicodemus*, 979 F.2d at 991-92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees.  *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

Although prisoners retain many constitutional rights, it has been recognized that incarceration inherently limits certain constitutional rights of prisoners. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment and county detention centers have a duty under the Fourteenth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Plaintiff's complaints of a lack of water in his cell for two weeks are insufficient to survive summary judgment.  Plaintiff admits that the decision to turn the water off was made due to inmates' flooding their cells. Plaintiff also admits he was allowed to flush the toilet once per day.  In order to state a viable conditions-of-confinement claim, an inmate must show that: (1) the conditions were objectively serious enough to pose a substantial risk of serious harm; and (2) that the prison official's state of mind was one of "deliberate indifference." *Farmer*, 511 U.S. at 834.

In *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993) the Fourth Circuit explained that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant harm. The PLRA of 1996 also placed an important limitation upon all actions arising from prison conditions, requiring proof of "physical injury" arising from the allegedly unconstitutional condition. Under 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for emotional stress: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Therefore, there is no liability under § 1983 for such claims.

In this case, Plaintiff's complaints of a lack of water in his cell for two weeks is insufficient to set forth a constitutional claim, as he has failed to present any evidence showing his basic needs were not met, that he was forced to endure the alleged lack of water for extended periods, or that he suffered any injury. *Strickler*, 989 F.2d at 1382; *see also*, *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (dismissal of claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).

Thus, because Plaintiff has failed to prove his basic human needs have not been met or that he has suffered any physical injury, Plaintiff cannot demonstrate a constitutional deprivation. Likewise, Plaintiff has not alleged, nor has he proven, that

Defendants have acted with deliberate indifference to his constitutionally-required needs. For these reasons, Plaintiff's claim of lack of water cannot survive summary judgment.

### 3. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

9

As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective

10

professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #28] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

January 7, 2011  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**